Thank you, sir. Thank you very much. Thank you to both counsel for well-presented arguments. We'll take the matter under advisement and call the last case of the day. Ario, the underwriting members of Syndicate 53 at Lloyds. Numbers 09-1921, 1922, 2989, 2990, 2991, 2992. I think there's others after that. Ms. Cohen? Ms. Gelman? Is it Mr. Rame? Rame, correct. Thank you. While we're waiting, did you wish to reserve time for rebuttal? I did, Your Honor. I have reserved three minutes. That's fine. Hang on for just a moment. Go ahead. Thank you. May it please the Court, Deborah Cohen for Joel S. Ario, Insurance Commissioner of the Commonwealth of Pennsylvania, in his capacity as the statutory liquidator of Legion Insurance Company and Villanova Insurance Company, both liquidation. I'll refer to the statutory liquidator and the liquidated companies as Legion. I will be addressing all of the issues on appeal, except for the issue of sanctions, which were ordered against Pepper Hamilton, which will be addressed by Ms. Gelman. There are two issues, two straightforward issues, before this Court on appeal. One is, could the parties, by agreement, opt out of the convention? Before we get there, I take it you don't appear to still be disputing the subject matter jurisdiction of the district court. You appear now to be saying that the right of removal under 205 was waived. Is that correct? We have opted out of the convention, which thereby resulted in the elimination of the removal provision. We do not contest that the district court had jurisdiction to consider whether or not the remand petition should be granted. I thought you were arguing that the right of removal was waived, not that you had opted out of the convention. You're not arguing jurisdiction anymore, are you? In other words, once it was removed under 205, the argument that caused the Court obviously some heartburn was the argument that the Court didn't have jurisdiction. And it looks to me like the briefing on this is now saying there was a waiver of the right of removal. In effect, yes, Your Honor, in the sense that the parties had the way that this case comes to this Court is fairly significant. Because in this matter, Legion filed its motion to review the awards and the arbitration by filing in the Commonwealth Court of the Pennsylvania State. Commonwealth Court, I assume, has original jurisdiction. It does. As it has in a number of matters involving governmental entities, state governmental entities. It does, Your Honor. It specifically has original jurisdiction over liquidated companies, insurance insolvency cases. Legion filed in the Commonwealth Court seeking review of the arbitration of the award under the Pennsylvania Uniform Arbitration Act. That was the agreement of the parties. Legion never went into federal court. There is no federal jurisdiction through diversity of citizenship. And Legion has never at any time invoked the Federal Arbitration Act. This was simply a proceeding under the PUAA, which was the agreement of the parties in the original contract between the parties. The result... The agreement, I mean, just to go back to the beginning, what we're fighting about. Arbitration here under shall take place in Philadelphia, Pennsylvania, unless both parties otherwise agree. So that's a venue. Except that here and after heard above provided, the arbitration shall be in accordance with the rules and procedures established by the Uniform Arbitration Act enacted in Pennsylvania. That looks to me like rules and procedures, right? Well, it is rules and procedures, Your Honor, when you go to the Pennsylvania Uniform Arbitration Act, which is referenced. What that is is soup to nuts. It provides for a system, a state system for arbitration, both in terms of the initiation, the conduct, and post-award review, including specifically vacatur standards. So Legion was, together with Syndicate 53, at the outset of their relationship. The last time I was involved with anything like this was Roadway. Yes, Your Honor. I got way involved in that and ended up writing a concurrence. There I think it was, if I recall, any controversy should be under state law, and that's where I had the hang-up. But here it doesn't say any controversy. It just says arbitration in accordance with the rules and procedures of Pennsylvania. So the FAA would apply, and the FAA allows you to talk about the manner in which you will arbitrate. Well, I disagree, Your Honor, because if you look at the PUAA, it is an entire system, which provides for the soup to nuts oversight of the arbitral process in Pennsylvania. Now, the implications for that are jurisdictional, in the sense that, as you do in your comparison to what — How do you get around Roadway, the majority opinion? Well, we think that the Roadway opinion is completely consistent, because in Roadway — Now, Roadway does come up in a different context. It's important to remember, and that's why I said it's important to remember how this case — But it's by virtue of federal law that you could opt for state court standards, procedures, right? I'm sorry. By virtue of federal law, Roadway says, the parties can opt for state law standards. Let me — that is a particular provision, a particular paragraph. But there has to be clear intent to do it. You need to tell me what the clear intent was. Well, it's very important. That's why I started with why — how this case comes to this court. Because in Roadway, what happened in Roadway was that the party who was seeking enforcement of the arbitration award went to the federal district court in the first instance on diversity of jurisdiction and sought review under the Federal Arbitration Act. So the context in which the court was considering the issue in Roadway was when you have an architecture of the Federal Arbitration Act, can you opt out for a portion of it? Because you were going to only be waiving or opting out in that particular context in part. Let's assume you can opt out for a portion. But in — and in Roadway, it was any controversy, but the majority didn't want to say that it was the whole thing. Here, it's just rules and procedures. Well, I think, again, rules and procedures, you have to go to the Pennsylvania Uniform Arbitration Act itself because the use of the word rules is to apply to the entire subchapter in the PUAA. It is clearly intending to adopt the entire subchapter because, number one, the words used in the arbitration act, the language that you're citing to in the contracts, says that you shall use the Pennsylvania Uniform Arbitration Act. It is mandatory. The arbitration shall be in accordance. Again, I keep coming — obviously, my hang-up here with you is rules and procedures. That's not a clear intent that you want to do anything beyond that. Well, I disagree if you actually look at the Pennsylvania Uniform Arbitration Act itself because the rules — there is not really a limitation that is only rules and procedures. Well, I don't think that there is anything outside of the rules and procedures of the arbitration because, as I said, if you look at the Pennsylvania Uniform Arbitration Act itself, it provides a coherent approach to arbitrations, which include not just the conduct. Well, so I understand that's your point. With respect to my specific question, then, if you're correct, the phrase the rules and procedures established by could be deleted here. They add nothing. Consistent with your position, it could read, with the Uniform Arbitration Act as enacted in Pennsylvania. So why these terms? Are they meaningless? Are they redundant? I think it is redundant in this context. Is it surplusage? I think it is. I think it is just simply expressing that it is going to be — Is that the way we should go about interpreting contracts? Is that the way we find clear intent? Well, I do think it is clear intent, Your Honor, because I think — The question is, is that the way we go about finding clear intent? Usually, you want to look at the text. I mean, having drafted a lot of these things, if you want what you wanted, would you have drafted it differently? In hindsight, I realize you would. But, I mean, looking forward, what made you think that everything's — there's no FAA involvement here at all? Because, as I said, by selecting a system, which is the Pennsylvania Uniform Arbitration Act, you are necessarily displacing or ousting the Federal Arbitration Act. Because if you are required, mandatorily, to adopt the Pennsylvania Uniform Arbitration Act, without any limitation, without exception, without subcategories — Ms. Cohen. Ms. Cohen. Ms. Cohen, this is Judge Aldersert. I would like some help here. Considering the convention, what is it? 205 gives district courts jurisdiction. And when we get to that which we have been talking about, the rules and procedures established by the PUAA, is that enough to trump the convention giving district court jurisdiction? It is enough to trump the convention. And let me go back to the question that you asked. In answering your question, Judge Aldersert, in Roadway, the court was careful to say that there are no magic words, that it is just simply a way of illustrating what is the intention of the parties. And with respect to your question about whether you can trump the Section 205, I think the answer to that is found in the Souter case. Absolutely. And Souter gives the test, doesn't it? It says a clear and unambiguous waiver of Section 205 right to remove. Because there is a strong and clear preference for a federal forum. Yes. Now, the question I put to you is that are you contending, and I think you are contending, that this rules and procedures established by the PUAA is the clear and unambiguous waiver of Section 205. Is that right? That's your position, isn't it? Yes. It displaces the FAA in its entirety, including that Section 205, which grants removal. I see. And, Your Honor, if I can go back to your point about the preference for the federal forum, because I do want to address that in a particular context. I know my time is up. No, that's fine. Again, you're on our time. But I was just adding on to Judge Alderser's question is Souter seems to be a pretty tough case to get around. I think Souter is supportive of our opinion, although I will say that you have to look at what happens after Souter. Souter is a case in which it was a motion to compel. There can be no waiver of a right to remove under the Convention Act in the absence of clear and unambiguous language requiring such a waiver. The Convention and the policy choices that support it establish a strong and clear preference for a federal forum, a policy that would be best served by resolving any ambiguity and contract language against waiver. I agree that that is very strong language, and, Your Honor, I believe that the arbitration language that we have pointed you to is that clear and unambiguous language. But we also have to look at Souter from another angle, which is subsequent to Souter, Souter, another issue was presented to the courts, first in the Youssef case in the Second Circuit, and then in the Third Circuit in AdMart in China in metals, which is the articulation of the principle that these principles of respect for foreign international contracts and what was referred to in the court below as this international public policy, that in those cases it would be impeded that that public policy doesn't have the same weight as the circumstances that are presented here, which is where you have a U.S. arbitration which is awarded and enforced in the U.S. Because in Youssef and in China in metals and AdMart, the cases that consider that point, the issue that was addressed  to change U.S. arbitration law. And they said in those cases, there's a big difference when the court is confronted, when the public policy strength is different, when you are confronted with a situation when you have an award from country A, which is being enforced in country B. But that is not the same issue. It doesn't have that countervailing point, it doesn't have the same force and effect when they are both appearing in the same country. And so it might get on reconsideration. It may well be that because of the facts of this case, as opposed to the roadway cases, that the standard might be considered to be less because there's not the same policy consideration. And I just want to, my time is up, so I do want to just leave with one point, which is there is no case which says that we cannot opt out of the convention. And it is our belief that the words expressed in the arbitration clause of our treaties was precisely that. I think we would all agree with the first clause of that last sentence. It's the second clause that I think is the problem. Thank you. Ms. Gelman. Good afternoon, Your Honors. Nancy Gelman for Pepper Hamilton. With respect to the Rule 11 issues. Can I just ask a question at the outset on the amount? Did you stipulate to the... Yes, Your Honor. Okay. It was stipulated so that the matter could be promptly appealed given the fact that there was a three-month delay between the entry of the orders concerning remand and the motion to vacate and when the judge ruled on the sanctions motion, which was an issue... Yeah, we'll get to that in a second. I mean, okay. I would have guessed there would have been a lot less. Your Honors, with respect... Let me just deal with that first, the point that you mentioned. Yes, normally there is a rule, supervisory rule that we have that you need to have brought before the court a motion for sanctions prior to judgment and the court having acted. But when you look at the reason for that is so you don't have duplicative appeals, separate panels looking at the same stuff. A, you don't have that here at all. It's all before us. And B, when you look at the Gary case, in effect what Gary did, even though it parroted the words, what it actually did was remand. Yes, Your Honor, we concede this is the court's supervisory rule to administer as the court sees fit. It was happenstance that the appeals happened to be before the same panel. We didn't know how long the judge would take to rule on this matter below. Yes, but here they are. I mean, I think I'd rather, unless my colleagues have some questions, is just to get into the merits, if you will, as to why the court decided on the removal issue why there should be sanctions. Well, Your Honor, it's our position that the district court abused its discretion in awarding Rule 11 sanctions against Pepper because it based its ruling on an erroneous view of the law. And that erroneous view was that there was no basis in the existing law for the position to assert that there was no jurisdiction. Didn't what he say is, you know, the thing that is front and center is 205. And you never cited 205. You cited Volt and Roadway, which didn't talk about jurisdiction. Barely discussed 203. And I think in another context, and I don't think he found, you don't have to find bad faith, obviously, and I don't think he did it here at all, but it was just so below the standards that he expected here that he was upset. Below the standards in terms of what specific standard being applicable here? What is the Rule 11 standard? The Rule 11 standard with respect to... It should be frivolous, doesn't it? Frivolous patently without merit. Patently without merit. And not supported by existing law. The argument that was made, and on the Rule 11, I'm not arguing whether the court should reverse or not reverse the issue on removal jurisdiction. I'm arguing as to whether or not simply on Rule 11, this was an argument that was well-founded on existing law and that it was not, it was a plausible view of the law. It's an argument that the removal jurisdiction was based solely on the Section 205 of the FAA. And the position taken by Legion was they had opted out... But the controlling Third Circuit, I mean, the other thing was controlling Third Circuit law was suitor, and that wasn't cited either. Well, the argument that was made was that by opting out of the FAA, by selecting the PUAA, you no longer had a basis for jurisdiction under the FAA. And that what the district court did, I agree, that the district court looked at 205 and said, 205 provides removal jurisdiction. That's correct. But he looked at that under the FAA. The position of Legion was they had selected a different arbitration regime, which they were entitled to do under Volt and Roadway, and Hall, which was also cited. And Wall Street... Well, I don't think Volt and Roadway necessarily deal with jurisdiction. I think it's really suitor. Now, the thing that's in your favor is the district judge never cited suitor. But Hall and Roadway deal with the issue of a party being able to opt out of the Federal Arbitration Act. And the consequence of opting out of the Federal Arbitration Act is you no longer have the removal jurisdiction provision of that act to support removal. And you've selected an act, the Pennsylvania Uniform Arbitration Act, which did not provide for removal jurisdiction under a Federal question type basis. And that was the argument that was made to Judge Caldwell. Whether he accepted it or not, it was an argument that was founded in existing law in Volt, which says you're to enforce the... This is a private arbitration among parties. The fundamental principle of arbitration is to enforce the agreement the parties made. The argument was these parties had selected a different arbitration regime, the Pennsylvania regime. And what Judge Caldwell did was he said, Well, I have jurisdiction, removal jurisdiction under the Federal regime. He looked at the arbitration regime, which the parties did not select. He didn't look at the arbitration regime, which the parties argued they did select. But the standard we have here is arbitrary and capricious. I mean, you know, maybe in his shoes I wouldn't have entered sanctions against you. But there was a lot that could have really caused agita here. I mean, no cite to 205. No cite to Souter. Citing two cases that really weren't on point. It just sort of got the impression that what he thought was this was a way of trying to string out litigation or whatever it might be. But obviously he was upset. Well, Your Honor, I agree. Something caused him to grant this. But this Court's review is abusive discretion. And the test under the Cooter, the Supreme Court case, for abusive discretion is whether these sanctions were based on an erroneous view of the law. And the view of the law that Judge the District Court applied was that there was no basis in existing law for this argument. And there was a basis for this argument in the existing law that was cited. Vault that you apply the agreement that the parties entered into. You enforce that agreement. Roadway and hall that you can opt out of the Federal Arbitration Act. If you opt out of the Federal Arbitration Act, which was the only basis for removal cited in the removal petition, then you have no basis for jurisdiction. That is an argument that is based on existing law. It is not frivolous. It's not patently without merit. It's a plausible view of the law. And Rule 11 sanctions shouldn't be imposed on a party simply because they are on the losing side of a motion. This was an argument that was based on existing cases cited to the Court. This argument that I've made was set forth in the papers. He rejected it. But that doesn't mean that it's a basis for Rule 11. It does look like the judge here was careful in terms of on the second sanction issue, the vacator, he did not enter any sanctions. We have to look at each one separately. And when you deny Rule 11 sanctions, remember the rule as amended in 1993 doesn't even require imposition of sanctions if there is a violation of Rule 11. So part of the ruling that he made where he denied the Rule 11 sanctions with respect to the motion to vacate, and that was a well-founded decision because, as everyone agreed, this underwriter, Ian Crane, had no recollection of anything that happened, and all the theories of rescission that had been argued for were based either on a misrepresentation theory, which required reliance, or a contract theory, whether expressed or implied, that was based on there being a term added to the contract about the underwriting methods that were allegedly breached. And he had no recollection. So that there, it was the judge was looking at something that the record supported, making the argument about the lack of recollection, and his denying, you know, sanctions there. I think the courts need to look at Rule 11 sanctions where they're granted much more carefully than when they're denied because these are, this type of an effort can be used as a litigation tactic. What did happen here? What was before the judges to look? Okay, we think there was a basis for the motion we made, which is, in effect, that we had chosen PA law. PA law should obviate any reference to FAA and, therefore, take shot, I guess, of 205. But what was the explanation for why there was no citing at all to 205, to 203? Because the, exactly the argument that Your Honor just recounted. If you're not in. But he said that Volt and, he said Volt and Roadway did not address jurisdiction. But they, the argument that was made was the, what was the consequence of enforcing a party's agreement that selected a state arbitration regime? And the consequence of that was you don't have jurisdiction for removal because that regime doesn't have jurisdiction. That was the consequence of those cases and the reading of those cases. Whether they talk about jurisdiction or not, they talk about arbitration and enforcing the agreement that the parties made. And the agreement that was argued to Judge Caldwell, and this was a plausible view of the law, was that those, the right to have the party's contract enforced and the party's contract selected a regime that didn't support removal jurisdiction. Therefore, there's no removal jurisdiction in front of the court. And whether there would be removal jurisdiction under the federal regime is irrelevant for this argument because the federal regime wasn't the regime that the parties selected, and that was the argument. And that was the reason that it was proper here not to excite it. What I'll do is we'll give you a couple minutes for rebuttal as well. Mr. Rehm. Good afternoon, Your Honors. May it please the Court, my name is David Rehm, Counsel for the Underwriting Members of Syndicate 53 at Lloyds for the 1998 year of account. On the removal under 205, does the Souter standard require use of magic words like waiver, right of removal, et cetera, and 205? I think Souter requires you specifically to adopt. If you're talking about for the issue of whether or not there's a federal forum, I think clear and unequivocal means that you have to say any removal or other, any vacature or confirmation petition here will be held in state court. As a matter of fact, what we had here in this particular contract was the exact opposite. We had actually in two specific places in this contract, the specific invocation of the federal court system. First of all, in the service of suit clause, it specifically preserved my client's right to remove to federal court. And additionally, in Article 12, the arbitration clause in this contract, it specifically stated that if there was a dispute between the parties as to who the umpire should be, that dispute would be resolved in the federal court for the Eastern District of Pennsylvania. In this situation where the parties were not diverse and there was no other basis for federal court jurisdiction other than the convention, it's impossible to find that clear intent in this situation. Otherwise, you cannot harmonize the specific provisions of the contract. You're not contesting any part of it. Mr. Rain, this is Judge Aldous, sir. I just would like you at the beginning of this argument to tell us what, if you had your druthers, what would you like this court to do in this appeal? I would like this court to affirm the district court that these arbitration awards are confirmed. Quite frankly, there is no functional difference between the PUAA or the FAA convention standards, so it can be done under either one of those. But we would like these arbitration awards confirmed. We would like the Rule 11 decision, which was made by Judge Caldwell, to be affirmed. Additionally, we did appeal his denial of Rule 11 on the merits of the issue because on that issue where you have an unreasoned award, nine separate bases for the way the court could have decided it. An honorable engagement clause, which relieved the panel of following the strict rules of law, said that the panel could look at this as an honorable engagement rather than strictly a legal obligation. There simply is no basis for their position that this award should be vacated. Let me ask you with regard to the point, the sanction that you would like to have reversed. The judge said that Pepper Hamilton's motion to vacate was, in effect, not objectively unreasonable because there was a good argument for applying, or at least a basis for applying, the PUAA standard. I don't think that that was the reason. I don't think it focused on the difference between the PUAA and the convention, but rather he said that they had asserted a basis for why the syndicate's underwriter's testimony was necessary for the case. That's right. I would, okay. All right. Judge Alderson again, while Judge Amber is thinking over there. You suggested that the PUAA and FAA standards are the same. I'll tell you right now, I think there's some fundamental differences there. You are not suggesting then that we would retain this in federal court but use the state rules and regulations. You're opposing that. Our position is that one would use, this should be in federal court, and that the convention and FAA standards should apply to analyze this arbitration award. But the question of whether or not there is federal court jurisdiction and what standards would apply in analyzing this arbitration are two separate questions. You could conceivably have... By the word standards, do you mean law? Yes, both. I do mean the law as in the convention versus the law as in the PUAA. I mean you could, our position is there's federal court jurisdiction here on the convention. Our position is there also was no clear and unequivocal intent to opt out of the convention's vacature standards. Judge Alderson, do you want to finish up that line? No, I'm confused, but I understand what he said. I'm saying that one could posit an arbitration clause which... It would be difficult, but one could posit something that ended up in federal court which also had the state arbitration standards. One does not have that here, but one could conceive that that could occur under a different clause. I think Roadway acknowledges that. It just has to be clear and unambiguous. Correct. Let me go back to where I was working backwards on the sanctions. The key thing, it would appear, that was missed by the law firm here was a cite to suitor. And yet the clear thing that was missed by the district judge was a cite to suitor. So how can Pepper Hamilton's failure to cite suitor in its motion to remand back to state court be objectively unreasonable in that circumstance? I think that's because of the way that Pepper Hamilton phrased their argument. The way that Pepper Hamilton put their argument in in the district court, suitor was not relevant. How was it not relevant? Well, because if you take a look... I mean, I guess the argument would be that they chose the PUAA, therefore nothing in federal law should be applicable, therefore suitor applies when you have that situation and this isn't that. But, you know, the argument would be that, look, they should have dealt with it and distinguished it away in some way, shape, or form. But if it was so egregiously bad, why didn't the district court deal with it? I think because the argument itself was that there was no jurisdiction in the first place, which they argued somehow that Roadway and Volt provided for that. And when you looked at Roadway, it actually said directly to the opposite. It stated even if you have some right to opt out of the domestic FAA vacature standards, you are still under the convention. You're still under the FAA. It's because the FAA allows you to do that, that you're permitted to do that. So their argument was in essence defeated by that portion of Roadway, and I don't think the judge was going to address the waiver issue. If that wouldn't be the first time that litigants misread a case, heck, that wouldn't be the first time the judges have misread cases. Correct. But they never made that argument and they never argued that there was waiver. So how was the judge supposed to, in his own mind, think well maybe there was some other argument they could have made? And if you take a look at Souter and the clear and unambiguous standard, they weren't going to meet that anyway. So you're essentially suggesting that maybe the judge should have come up with another argument. It wasn't going to be a good argument. They had a situation put before the court, and we've all had what Judge Becker used to say when you look at counsel and go, counsel, you're marching up San Juan Hill on this one. I mean you don't have much of a chance. But that doesn't mean that it's sanctionable. The point was we had an arbitration. We won an arbitration. First we're dragged into state court and we remove it, as is our right, and then they try to take us back there. They're opposing arbitration. They're opposing confirmation of some clearly confirmable awards, and it's just being dragged out. On the motion for jurisdiction, actually the very first question I asked was how did we get as high as 100,000? And I guess obviously that's been stipulated too. But just for the sake of understanding, there is a motion. You respond to it. The court, you would think the court would deny it. What went into play here besides the briefing, the motion and the briefing on the motion? Was there an oral argument? There was not, but there was also ‑‑ I have to ask my colleague the answer. I don't want to give you a wrong answer. If you want me to ask, I will. I did not put those figures together. I'm sorry. Okay. Your Honor, my understanding, and I'd ask my colleagues to correct me if I'm mistaken, was there were several rounds of briefing on the motion to remand, the motion to defer, and then also the amount of time spent in briefing Rule 11 on this issue. Okay. So it was also the amount of time. Okay. I got it. Okay. Counsel, this is Judge Aldersert again. I was interested in your expression that your friends on the other side dragged you, wanted to drag you into state court. Well, your contract, the contract of arbitration that you people agreed to talks about Pennsylvania law. Why is that dragging you into federal? They're trying to drag you into the state courts. Your Honor, I think I accept your comment that they have the right to initially bring the litigation in Pennsylvania court, but once we move to remand back to the federal court and we have a contract which specifically provides that we have removal rights, I think that should have been accepted at that point. Okay. Well, what is to prevent a solution along these lines? The convention applies. The district court has jurisdictions, jurisdiction. But although it's going to be a federal court, it will be applying the rules and regulations of the PUA. I think that would be improper here for three separate reasons, Your Honor. First of all, pursuant to the roadway law, there was no clear intent to opt out of the convention vacature standards. The entire arbitration article of this contract, Article 12, deals only with the conduct of the arbitration. It does not, as does many other arbitration clauses, talk about what happens under motions to confirm. I think here when you're talking about rules and procedures, you're talking about 7306 through 7312 of the PUA, which are the provisions for conducting an arbitration. Second of all, I do not think that while you may be able to opt out of the domestic FAA vacature standards, there has not been a single case which allowed for opting out of the convention's vacature standards. The purpose of the convention is different than the purpose of the domestic FAA. Pursuant to the Shirk case, it is to unify the standards by which arbitral awards are enforced in the signatory countries, and I don't think that's unified if you had 50-plus different standards here. Finally, I think after Hall Street, I do not think you can opt out of the domestic FAA standards, at least in federal court. I think the holding of Hall Street is that Sections 10 and 11 of the domestic FAA, those standards are exclusive. Legion has argued in their reply that that holding is subsumed by the dicta in the case, which provides for other avenues into court. The question is how to harmonize those two statements, and I think the way that you do it, at least in the context of the domestic FAA, is if you look at Sections 10 and 11, they are binding only on the federal court. They do not say anything about what the standards should be in state court. So I think after Hall Street, you are permitted, if you choose a state forum, to opt for different vacature standards if you have a domestic FAA case, but not in federal court. Thank you. All right, if we would accept all of that, counsel, how do we, what do we do with the expression rules and procedures established by the PUAA? Just ignore that? I think in the context of a vacature and confirmation motion, I don't think it's relevant. I think if you look at that clause, it's talking about how the arbitration is supposed to be conducted. The PUAA has very distinct rules and procedures for how to conduct an arbitration. They're in Section 7306 through 7312, and I think that that is what the parties have put forward and have decided to apply. The law is that you need to have clear and unequivocal opting out. I think where you use the language rules and procedures of the arbitration, I think you cannot possibly say that that is an opt-out of the vacature standards. It's not clear, and it's not unequivocal. Any further questions? None here. Thank you. Thank you. Ms. Cohen. Let me briefly address a point that you asked of Ms. Gelman, which was whether it was egregious to cite Volt, Roadway, and Hall, which were not convention cases and which were not jurisdiction cases. It is very clear in this circuit, in First Options and Chinaman Metal, that it has been held that you may cite Chapter 1 cases in the context of Chapter 2. In fact, the convention itself says that Chapter 1 may be applicable to Chapter 2. And what the guiding principle is, as articulated in those cases, is where the principle to be drawn out from those cases is fully applicable, then you may cross-fertilize. And in particular in Chinaman Metal, the court said this principle, whether the court is obligated to enforce the private agreement of the parties, is one such principle that transcends both domestic and international cases. And so that is why we were relying on Volt, Roadway, and Hall, because in Volt we took the principle that it is a private contract to be enforced by the courts. Switching gears for one second, the question of Judge Aldersert is, okay, you say that you're going to apply the rules and procedures of the PUAA. What does that mean? And the answer that comes back is it means how you go about the process of deciding, but it certainly doesn't apply to vacature. Well, I would disagree, and the best answer to that, the best rebuttal to that, was just given by Mr. Rain, who said, oh, well, when we were talking about the rules and procedure of the Pennsylvania Uniform Arbitration Act, we're only talking about 7306 through 7312. We don't get to those sections, which are the vacature standards. Well, that's not what this clause says. It doesn't limit in any way or form the arbitration act that we have selected. The parties could have done that. It could have said we are only accepting this portion of the PUAA. We are not accepting the whole portion. We said we are accepting the whole portion, and that reference to rules and procedures, again, rules is the word that is used in the introduction to the PUAA. They said that this is the rules of arbitration. So it's really belts and suspenders, but clearly where the parties have expressed, I am taking this entire section, the only inference to be drawn from that is that they are taking the entirety. They are not limiting it, and the effect of that is to completely displace the FAA. To your knowledge, is drafting today that wishes to have state law apply to all aspects of arbitration drafted differently than this? Well, remember, we also have a separate choice of law clause. So this is obviously doing something different. Counsel, why don't you answer Judge Ambrose's question? I'm sorry. He's asking because you are in this field, and he's asking you what is being done today by counsel. He's giving you a generic question, and I think it's a good question. I apologize, Your Honor. Let me address that question. Or you can say I don't know. Well, I do know, and I do know that the choice of law provisions that appear in reinsurance arbitration contracts do provide the language which we also have in our agreement, which is the law that shall be applied will be the law of Pennsylvania. That's a general choice of law. That is sort of the generic choice of law. But the arbitration, it would seem that my guess is that people would be drafting them today, if you want state law, that the arbitration shall be conducted in accordance with the PUAA, including without limitation all matters relating to rules, procedures, ba-boom, ba-boom, ba-boom, ba-boom, ba-boom. Well, there's no question you could make this language better or tighter. But all of us who have drafted in the past, we tend to be sort of crazy about how we draft. That's why documents get so long. Right. And it would seem that in light of this, that's the way that one would draft it in order to do it, especially in light of the, since 1983, I mean, everything, all directional arrows, with the possible exception of a vote, a point to the federal law. Well, in this particular case, the parties clearly expressed their intent not just to have a choice of law using Pennsylvania law, but a perception which provides for the use of the Pennsylvania Uniform Arbitration Act. And I think that it would render surplusage the arbitration selection provision, the rules and procedures, if it was only intended as a choice of law clause. And I just would like to refer the Court to a recent case out of the Fifth Circuit, ENSCO 579 Fed 3rd 442, which is a case which did address the question of magic words and came to the conclusion that there were no magic words and there could be an implied express selection. And so I think what you have to do here. I'm not sure ENSCO helps you as much as they do. Well, I think ENSCO certainly is very strong. But in the context of these contracts, what gives content to that particular word that's bothering you, which is that we used arbitration. ENSCO didn't require exclusive venue in Dallas County or something like that. Exclusive jurisdiction in the courts of Dallas. And no question that is the strongest possible expression. Remember, these are contracts from 1998. It precedes Roadway. But what gives content that that word arbitration is the functional equivalent of controversy in Roadway is the fact that you are referring to the entire PUAA. Thank you. Thank you. Ms. Gelman. Coach, I give you two minutes. Thank you, Your Honor. I would just like to call the court's attention to the case law in the circuit that Rule 11 sanctions are only reserved for exceptional circumstances where a motion is patently unmeritorious or frivolous. And it's not to be used simply because the party is on the losing side of the motion. And this is not that exceptional case or those exceptional circumstances. We're not arguing a position that's plainly contrary to controlling authority. There's no case that says that Legion's position was incorrect, that you can't select another regime other than the FAA for purposes of arbitration. In effect, your argument is, look, we may have gone down the wrong path. No one questions that we did it in good faith. And to some extent, the wrong path, if it was a wrong path, was the basic argument that's being made with regard to the merits here. And the court, coming back, is saying, but there's so many basic things that were missed. And you then come back and say, yeah, but you missed the most basic of them, which is the case that everybody seems to now say is on point. Well, I think what this argument has shown is that this is a complex area and that there isn't – I think that Rule 11 is a reserve for cases where there's controlling authority that, you know, is on point. It's contrary to your position. It's egregious situations like that. It shouldn't become a sanction for people arguing a position that may not prevail in the end of the day and that they get sanctioned for it. Attorney's fees shifting, that's not the traditional American rule, and Rule 11 shouldn't be used in that fashion. Thank you. I would ask that counsel, if you would get together with the court's office and have a transcript ordered of this oral argument. I think arguments were well presented by all sides. I would ask that the cost for the transcript be split evenly between that side and this side. So however they want to split their half is fine, but that it be split half to this side, half to that side. Thank you, and thank you for a job well done. We'll take the matter into advisement and recess. Thank you. Judge Alderson, we'll call you in about ten minutes on the phone. Thank you. Thank you.